UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRYAN A. OGLE, | ) |
|               Plaintiff, | ) |
| v. | ) No. 2:22-cv-00169-JPH-MG |
| WEXFORD OF INDIANA, LLC, NAVEEN RAJOLI, SAMUEL BYRD, KIM HOBSON, AMY WRIGHT, MASON, LOVELACE, JULIE HAMILTON, BARBERA RIGGS, J. CHANTELL, K. MCDONALD, T. AULER, A. COOPER, CHELSEY PEARISON, | ) |
|               Defendants. | ) |

**ORDER GRANTING STATE DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Bryan A. Ogle, a prisoner at Wabash Valley Correctional Facility, alleges that certain defendants were deliberately indifferent to his serious medical conditions in violation of the Eighth Amendment and that other defendants retaliated against him in violation of the First Amendment. Defendants include Wexford of Indiana, LLC, and eleven Wexford employees ("Medical Defendants"), as well as Officer Mason and Officer Lovelace ("State Defendants").

The State Defendants have moved for partial summary judgment on the claims involving deliberate indifference to epilepsy and retaliation, arguing that

Mr. Ogle did not exhaust his available administrative remedies before filing suit as required under the Prison Litigation Reform Act. As explained below, the State Defendants' motion for partial summary judgment is **GRANTED**.

## I.
### SUMMARY JUDGMENT STANDARD

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
### BACKGROUND

Mr. Ogle is suing the State Defendants for deliberate indifference to his epilepsy in violation of the Eighth Amendment and for retaliation in violation of the First Amendment. *See* dkt. 7 (Screening Order). The State Defendants have moved for summary judgment on those claims based on exhaustion.[1]

**A. IDOC Grievance Process**

The Indiana Department of Correction maintains an administrative grievance process.[2] Dkts. 21-2, 21-3. The purpose of the grievance process "is to provide a process where offenders committed to the Indiana Department of

---

[1] The State Defendants concede that Mr. Ogle exhausted his available administrative remedies on his claim alleging deliberate indifference to his eye injury. Dkt. 22 at 1, n. 1, 4. The Medical Defendants have withdrawn their exhaustion defense and do not seek summary judgment on this issue. Dkt. 24.

[2] During the time relevant to this lawsuit, the grievance process was updated. For purposes of this motion, there are no material differences between the original and updated versions of the grievance process. *Compare* dkt. 21-2 *with* dkt. 21-3.

3

Correction may resolve concerns and complaints relating to their conditions of confinement." Dkt. 21-2 at 1; dkt. 21-3 at 1. Prisoners may use the grievance process to raise issues over the "[a]ctions of individual staff, contractors, or volunteers," including "[a]cts of reprisal for using the Offender Grievance Process." Dkt. 21-2 at 3; dkt. 21-3 at 3.

The complete grievance process consists of the following steps:

1. A formal attempt to solve a problem or concern following unsuccessful attempts at informal resolutions ("Formal Grievance");
2. A written appeal to the Warden/designee ("Facility Appeal");
3. A written appeal to the Department Grievance Manager ("Department Appeal").

Dkt. 21-2 at 3; dkt. 21-3 at 3.

A Formal Grievance must be submitted "no later than ten (10) business days from the date of the incident giving rise to the complaint or concern." Dkt. 21-2 at 9; dkt. 21-3 at 10.

A Facility Appeal must be submitted on State Form 45473 ("Grievance Appeal form") within five business days of receiving the grievance response. Dkt. 21-2 at 12; dkt. 21-3 at 12.

To submit a Department Appeal, the prisoner "shall check the 'Disagree' box, sign, and submit the completed State Form 45473 . . . within five (5) business days of receipt" of the Formal Appeal. Dkt. 21-2 at 13; dkt. 21-2 at 13.

4

### B. Critchfield Affidavit

The State Defendants have submitted an affidavit from Shelby Critchfield. *See* dkt. 21-1. Ms. Critchfield is a grievance specialist at Wabash Valley Correctional Facility. *Id.* at ¶ 2. She states that "[a]ll offenders are made aware of the Offender Grievance Process during orientation. Offenders also have access to a current copy of the policy in the facility law library." *Id.* at ¶ 11.

### C. Grievance Records

The State Defendants have submitted a document titled History of Grievances for Offender 156782 Bryan Ogle ("Grievance History"). Dkt. 21-4. This document purports to summarize all of Mr. Ogle's grievances during his confinement at the Indiana Department of Correction. *Id.*

#### 1. Formal Grievance 111450

Mr. Ogle submitted Formal Grievance 111450 related to medical care on February 13, 2020, dkt. 21-5 at 11, dkt. 21-5 at 11, and the Grievance History shows it was received on February 19, 2020, dkt. 21-4 at 3. The Grievance History shows that Mr. Ogle did not submit a Facility Appeal. *Id.*

Formal Grievance 111450 accused "Prison medical staff / provider" of "continu[ing] to refuse Prisoner B. Ogle medical care for his known serious medical conditions." Dkt. 21-5 at 11. These chronic conditions included "loss of consciousness, seizures, after persistent headache/migraines w/ fever." *Id.*

The grievance was denied on March 23, 2020. Dkt. 21-4 at 13. Mr. Ogle was notified of the denial on March 26, 2020. *Id.* Two business days after Mr. Ogle was notified of this denial, he was given a blank Grievance Appeal form.

5

There is no evidence in the summary judgment record that Mr. Ogle completed and returned this form or otherwise attempted to submit a Facility Appeal related to Formal Grievance 111450.

### 2. Retaliation

There is no designated evidence that Mr. Ogle completed the three steps of the grievance process with respect to any First Amendment retaliation allegations against the State Defendants. The Grievance History shows that Mr. Ogle completed the grievance process with respect to two Formal Grievances during the time period relevant to this lawsuit. *See generally* dkt. 21-4. One is Formal Grievance 117071, which is a medical grievance related to Mr. Ogle's eye injury. *Id.* at 3; dkt. 21-5 at 1-10. The other is Formal Grievance 117074, which is a grievance related to "Mail Communication – Restricted Mail." Dkt. 21-4 at 3.

The State Defendants have submitted two relevant Formal Grievances, in which Mr. Ogle alleged that he was subjected to "retaliation," that were purportedly rejected for failing to comply with the grievance process' technical requirements. *See* dkt. 21-5 at 19-20, 22-23.

One Formal Grievance accused Dr. Rajoli of retaliating against Mr. Ogle. *Id.* at 22-23. It was rejected by the Grievance Specialist as being "out of time frame. Also, form incomplete, missing the date. Also, compensation for services is a tort claim issue." *Id.* at 24.

The other Formal Grievance alleges that on August 13, 2021, "Prison/medical staff abused their authority to maliciously retaliate against B. Ogle for exercising the protected conduct of seeking emergency medical care

6

for an obvious serious medical injury / condition, i.e. (hives / skin irritation) by refusing B. Ogle any such emergency medical assistance for absolutely no medical reason." *Id.* at 19. According to this Formal Grievance, when Mr. Ogle pressed an emergency call button, "dorm / custody staff refused to respond, stating 'sorry dude, it's our break time.'" *Id.*

This Formal Grievance was rejected by the Grievance Specialist as untimely. *Id.* at 21. The Formal Grievance is dated August 14, 2021, and it was rejected on September 16, 2021. *Id.* at 19, 21.

## III.
## Discussion

### A. Exhaustion Standard

The Prison Litigation Reform Act provides, "No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e. The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th

Cir. 2006). Exhaustion is an affirmative defense, and defendants bear the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before filing this suit. *Kaba v. Stepp*, 458 F.3d 678, 680-81 (7th Cir. 2006).

### B. Arguments

The State Defendants argue that Mr. Ogle's claims must be dismissed because he failed to exhaust his available administrative remedies before filing suit.

As to his epilepsy claim, the State Defendants argue that "[b]y failing to file a written appeal related to continuous seizures to the Warden or his designee against Defendants, Plaintiff did not properly complete two of the three steps in the process." Dkt. 22 at 5. As to his retaliation claims, the State Defendants argue that "[b]y failing to file any grievance forms to the facility related to retaliation against Defendants Mason or Lovelace, Plaintiff did not properly complete any of the steps in the process." *Id.*

Mr. Ogle has filed a two-page, unverified response, arguing the State Defendants' brief

> (1) misrepresents the material facts as true, accurate, reliable, and/or uncontroverted; (2) misrepresents the law; and/or precedent by selective and/or deceptive omission; (3) abuses the summary judgment process in hope to derive a default judgment based on said misrepresentations and/or the plaintiff's ignorance as a poor-pro se-prisoner-litigant; and/or, (4) request the Court abuse its discretion by prompting the Court to rely on the said misrepresentations; instead of the actual material facts, law and precedent, as a means to procure a favorable (summary) judgment on the State Defendants' behalf.

Dkt. 29 at 2.

Mr. Ogle states that his arguments are "supported by designated evidence and the arguments set forth in the accompanying memorandum, which is incorporated by reference." *Id.* However, Mr. Ogle did not submit any designated evidence or an accompanying memorandum.[3]

### C. Analysis

#### 1. Deliberate Indifference to Epilepsy

Formal Grievance 111450 accuses the "prison medical staff / provider" of failing to adequately treat Mr. Ogle's epilepsy. Dkt. 21-5 at 11. This Formal Grievance does not satisfy the PLRA's exhaustion requirement because Mr. Ogle did not submit a Facility Appeal or a Department Appeal, as the grievance process required. Dkt. 21-2 at 3; dkt. 21-3 at 3. There is no designated evidence that prison officials prevented Mr. Ogle from filing a Facility Appeal. To the contrary, prison officials sent Mr. Ogle a Grievance Appeal form two business days after providing him with notice that his Formal Grievance had been denied.

Mr. Ogle has not explained why he failed to submit a Facility Appeal, and there is no evidence in the summary judgment record that supports a reasonable inference that this step of the grievance process was "unavailable." Accordingly, the State Defendants' motion for partial summary judgment as to Mr. Ogle's epilepsy claims is **GRANTED**.

---

[3] The State Defendants alerted Mr. Ogle to the fact that he did not submit an accompanying memorandum when they filed their reply on March 20, 2023. Dkt. 30 at 1, n.1. Despite this notification, Mr. Ogle did not attempt to file a motion to submit materials that he may have inadvertently omitted from his previous filing.

9

### 2. Retaliation

The summary judgment record includes two Formal Grievances that purport to describe retaliatory conduct.

One Formal Grievance describes an encounter between Mr. Ogle and Dr. Rajoli; it does not allege that the State Defendants or any member of the custodial staff engaged in retaliation. Dkt. 21-5 at 22-23.

The other Formal Grievance complained that Mr. Ogle did not receive emergency medical treatment for a rash. Dkt. 21-5 at 19-20. Although it includes the word "Retaliation," this Formal Grievance does not allege that the State Defendants or any other member of the custodial staff retaliated against Mr. Ogle for protected First Amendment activity. It merely alleges that unnamed "dorm/custody staff refused to respond" to Mr. Ogle's request for emergency medical care because they were on their "break time." *Id.* at 19.

To satisfy the PLRA's exhaustion requirement, a grievance must provide prison officials with notice of the alleged misconduct so they have an opportunity to investigate and address that misconduct before the prisoner files a lawsuit:

> [A]n inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought. This notice principle is grounded in the purposes of exhaustion under the PLRA. The exhaustion requirement protects the prison's administrative authority by giving it an opportunity to correct its own mistakes before suit is filed against it in federal court. In addition, exhaustion promotes efficiency because a claim can generally be resolved much more quickly in an administrative proceeding than in litigation in federal court. Accordingly, we've held that a prisoner satisfies the exhaustion requirement when he gives a prison notice of, and an opportunity to correct, a problem.

*Schillinger v. Kiley*, 954 F.3d 990, 995-96 (7th Cir. 2020) (cleaned up).

In *Schillinger*, the Seventh Circuit affirmed summary judgment when the prisoner's grievance did not provide adequate notice of his Eighth Amendment failure to protect claims against prison officials. Although the grievance identified the date on which the prisoner was attacked and suggested that prison officials generally could have done more to prevent the attack, the Seventh Circuit held that the grievance did not provide adequate notice of the specific claims the prisoner ultimately brought in federal court:

> [Defendants] Officers Starkey and Kiley are not mentioned. Nor is [defendant] Sergeant Matti—or an unidentified sergeant, for that matter. The attacker is not identified, and there's no reference to an earlier confrontation between Schillinger and the attacker, much less a previous threat. In short, there are no allegations that any prison guards—even unnamed guards—had reason to know in advance that an attack might occur and failed to take appropriate measures to prevent it.
>
> Instead, Schillinger's grievance raised two entirely different problems: no guards were nearby when the attack occurred, and the responding guards took too long to come to his aid. This did not give the prison notice of the claim at issue here, which concerns events preceding the attack and conduct by officers who were not mentioned in the grievance. Accordingly, the judge correctly concluded that Schillinger failed to exhaust the single claim that survived screening. Summary judgment for the defendants was proper.

*Id.* at 996.

Like the plaintiff's grievance in *Schillinger*, the Formal Grievances described above did not put prison officials on notice of the retaliation claims Mr. Ogle brings against the State Defendants in this lawsuit. The Formal Grievances do not allege that Officer Mason, Officer Lovelace, or any other member of the correctional staff "acted in retaliation against the plaintiff; and/or willfully participated in a campaign of retaliation in response to the plaintiff

11

exercising the protected conduct of seeking needed medical care/medications and/or properly complaining when he received less than proper or adequate care that did not [provide] and/or delayed meaningful care." Dkt. 1 at 21. Instead, these formal grievances merely allege that on one occasion Dr. Rajoli refused to treat Mr. Ogle after he threatened to file a grievance against him, and that on another occasion unnamed custody officers ignored his request for emergency medical treatment for a rash because they were on break.

These Formal Grievances did not notify prison officials of the need to investigate the alleged campaign of retaliation that Mr. Ogle describes in his complaint. *Cf. Curry v. Butler*, No. 22-2608, 2023 WL 2981445 (7th Cir. 2023) (holding that the plaintiff's grievances were insufficient because they "did not name any prison staff or describe any individuals involved. A prisoner need not know the name of the prison employee who he is complaining about, but he must include as much descriptive information about the individual as possible so that prison officials are alerted to the target of the grievance") (citing *Schillinger*, 954 F.3d at 995-96).[4]

Accordingly, the State Defendants' motion for summary judgment as to these claims is **GRANTED**.

---

[4] The Court notes that the Formal Grievance complaining about the dorm/custody staff's failure to respond to Mr. Ogle's emergency call button on August 13, 2021, is dated August 14, 2021, yet the grievance was rejected as untimely. *See* dkt. 21-5 at 19, 21. To the extent there is a factual dispute over whether this grievance was properly rejected, that factual dispute is not material because the grievance itself was insufficient to exhaust Mr. Ogle's retaliation claims against the State Defendants.

## IV.
### REMAINING CLAIMS

Mr. Ogle is also suing the State Defendants for deliberate indifference to his eye injury. The State Defendants did not move for summary judgment as to these claims, and they concede that Mr. Ogle exhausted them before filing suit. *See* dkt. 22 at 1 n. 1, 3.

In his response in opposition to summary judgment, Mr. Ogle states, "Mason and Lovelace are not entitled to summary judgment as a matter of law; though the plaintiff does concede, they are entitled to relief from said eye injury claim on separate grounds and facts." Dkt. 29 at 1. In their reply, the State Defendants "seek dismissal on this claim based on Plaintiff['s] concession." Dkt. 30 at ¶ 7. Defendants may correctly understand Mr. Ogle's statement to mean that he no longer wishes to pursue claims related to his eye injury against the State Defendants. But since Mr. Ogle did not file a motion to dismiss or separate stipulation of dismissal, the Court gives him **until October 20, 2023** to file a status report indicating that he intends to pursue those claims. If Mr. Ogle does not file such a status report, the Court will construe his filing as a motion for voluntary dismissal and will dismiss the claim against Defendants Mason and Lovelace without further notice.

## V.
### CONCLUSION

The State Defendants' motion for partial summary judgment, dkt. [20], is **GRANTED**. Mr. Ogle's Eighth Amendment claims alleging that the State Defendants were deliberately indifferent to his epilepsy and his First Amendment

claims alleging that the State Defendants retaliated against him are **DISMISSED WITHOUT PREJUDICE**.

All other viable claims identified in the Screening Order remain pending. *See* dkt. 7. The Court will issue a pretrial schedule to resolve these remaining claims in due course.

**SO ORDERED**.

Date: 9/29/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

BRYAN A. OGLE
156782
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

All Electronically Registered Counsel