UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRYAN A. OGLE,                        )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        No. 2:22-cv-00169-JPH-MG
                                      )
WEXFORD OF INDIANA, LLC, *et al.*,    )
                                      )
                Defendants.           )

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bryan Ogle alleges that Defendants, who are employed by Wexford to provide medical care to inmates at Wabash Valley Correctional Facility, were deliberately indifferent to his migraine headaches, epilepsy, hypoglycemia, and eye injury in violation of the Eighth Amendment, and retaliated against him for seeking care in violation of the First Amendment. Defendants have filed a motion for summary judgment. Dkt. [39]. For the reasons below, that motion is **GRANTED**.

**I.**
**Facts and Background**

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Plaintiff failed to timely respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(b), (f).

1

Mr. Ogle is incarcerated at Wabash Valley.  Dkt. 1 at 2.  He is a chronic care patient, meaning that he typically would be seen by medical staff every six months.  Dkt. 42-11 at 6.  He suffers from migraine headaches, epilepsy, hypoglycemia, and gastroesophageal reflux disease, and has complex partial seizures.  Dkt. 1 at 12; dkt. 42-11 at 9.  He received medical care at Wabash Valley from about 2019 through 2021 for his seizures, hypoglycemia, a hand injury, and eye injuries.

## A. Seizures and migraine headache medication

Mr. Ogle is diagnosed with having complex partial seizures, and alleges that he also has grand mal seizures that cause him to lose consciousness. Dkt. 42-11 at 9; dkt. 42-12 at 23.  Mr. Ogle testified that his medical conditions are interrelated, and managing his migraine headaches is key to preventing grand mal seizures.  Dkt. 42-11 at 10; dkt. 42-1 at 4; dkt. 42-2 at 1.

Dr. Rajoli began treating Mr. Ogle in 2019.  Dkt. 42-1 at 2.  At that point, it had been at least a year since Mr. Ogle had taken antiseizure medications. *Id.* at 1–2.  Dr. Rajoli did not prescribe any antiseizure medication, but instead continued a prescription for Excedrin migraine, to be taken when necessary. *Id.* At times, Mr. Ogle's Excedrin prescription would expire.  *Id.* at 4–5; dkt. 42-12 at 75.  To get the prescription extended, Mr. Ogle was told he would have to sign up for nurse sick call or wait to be seen at another appointment.  Dkt. 42-12 at 75–76; dkt. 42-4 at 2.  Another time, Mr. Ogle submitted a healthcare request when his prescription expired, and nurse Kayla McDonald emailed Dr. Rajoli, who ordered a refill that same day.  Dkt. 42-6 at 2; dkt. 42-14 at 1.

In April 2020, Mr. Ogle saw Dr. Byrd, who prescribed Dilantin, an antiseizure medication. Dkt. 42-2 at 2. Mr. Ogle took Dilantin for a few months, but subsequently stopped taking it as it caused heartburn; Dr. Byrd therefore discontinued the prescription for Dilantin. *Id.* When Mr. Ogle saw Dr. Rajoli again in September 2020, however, he asked to try Dilantin again, and Dr. Rajoli prescribed it. Dkt. 42-1 at 3. By February 2021, Mr. Ogle ceased taking Dilantin, and no other antiseizure medication was prescribed. *Id.*

### B. Hypoglycemia

Dr. Byrd believed that Mr. Ogle's hypoglycemia was properly managed with education and an order for Mr. Ogle to have an additional snack, to regulate his blood sugar. Dkt. 42-2 at 3. Dr. Byrd did not believe Mr. Ogle required daily blood sugar checks.

On August 29, 2019, nurse Barbara Riggs responded to a call that Mr. Ogle was "out of it" and lying on the ground in the housing unit. Dkt. 42-7 at 2. Mr. Ogle's blood sugar was low, and Ms. Riggs provided him with glucose gel; Mr. Ogle was transported to the infirmary. *Id.* Mr. Ogle informed Ms. Riggs he had not eaten breakfast that morning. *Id.*

### C. Hand injury

On May 16, 2019, Mr. Ogle injured his thumb during a volleyball game. Dkt. 42-2 at 2; dkt. 42-12 at 12–13. Mr. Ogle was seen that day, and was instructed to ice, rest, and use Tylenol until he could be seen by a doctor. Dkt. 42-12 at 12–13. Dr. Byrd issued an order for an x-ray. Dkt. 42-2 at 2;

3

dkt. 42-12 at 12–13.  Mr. Ogle requested to be seen the next day, and Ms. Riggs told him to submit another request if he saw no improvement.  Dkt. 42-7 at 1–2.  Mr. Ogle continued to have issues with his thumb, and Dr. Rajoli saw Mr. Ogle on July 11, 2019.  Dkt. 42-1 at 2; dkt. 42-12 at 12–13.  He ordered a compression wrap, medication, and home exercises for his thumb injury.  *Id.*

### D. Eye injuries

On August 27, 2020, Mr. Ogle's eye was injured while he was playing basketball.  Dkt. 42-5 at 1.  He was seen that day by nurse Julie Hamilton. Dkt. 42-5 at 1.  She relayed her findings to Dr. Byrd, who ordered that Mr. Ogle receive an eyepatch, Tylenol, and be followed up with the next day to receive antibiotic eyedrops.  Dkt. 42-2 at 2; 42-5 at 1.  The following day, Dr. Byrd instructed Ms. Riggs to give Mr. Ogle antibiotic eyedrops, which Ms. Riggs dispensed to Mr. Ogle that morning.  Dkt. 42-2 at 3; dkt. 42-7 at 3.

Mr. Ogle submitted a grievance requesting a treatment plan for his eye injury.  Dkt. 42-3.  Kimberly Hobson, the health services administrator, responded to the grievance, informing him he already had a treatment plan and instructing him to submit a healthcare request if he had further medical issues.  *Id.* at 3.

On December 14, 2020, nurse Kayla McDonald saw Mr. Ogle after he submitted a healthcare request.  Dkt. 42-6 at 1.  Ms. McDonald asked the facility administrative assistant about whether Mr. Ogle would be able to see an eye doctor, but was informed that the eye doctor would not be back at

Wabash Valley until January.  *Id.*  Ms. McDonald therefore scheduled Mr. Ogle for a visit with the physician instead.  *Id.* at 1–2.

On December 17, 2020, Dr. Rajoli saw Mr. Ogle for the ongoing eye injury.  Dkt. 42-1 at 3.  Dr. Rajoli prescribed artificial tears, and ordered that Mr. Ogle be scheduled with an on-site optometrist.  *Id.*

On April 26, 2021, nurse Teresa Auler saw Mr. Ogle after he submitted a healthcare request about his eye.  Dkt. 42-8 at 1.  Mr. Ogle described having sharp pain in his eye.  *Id.*  Ms. Auler contacted Dr. Rajoli, who ordered a Toradol injection for the pain and immediate referral to the on-site eye doctor. *Id.*; dkt. 42-1 at 3.  Ms. Auler provided the Toradol injection and submitted the referral paperwork.  Dkt. 42-8 at 2.

Two days later, Dr. Rajoli referred Mr. Ogle to see an ophthalmologist about a potential corneal injury.  Dkt. 42-1 at 4.  Amy Wright assisted in preparing the referral paperwork.  Dkt. 42-1 at 4; dkt. 42-4 at 2–3.  The referral request was sent to Abigail Cooper, an administrative assistant at Wabash Valley who was responsible for scheduling off-site medical care.  Dkt. 42-9 at 1. Ms. Cooper was unable to secure an urgent ophthalmology appointment or on-site optometry appointment for Mr. Ogle due to provider availability.  *Id.* at 2–3.

On May 5, 2021, Dr. Rajoli was able to consult with the optometrist, and then ordered topical anti-inflammatories and antibiotics for the eye injury. Dkt. 42-1 at 4; dkt. 42-9 at 3.

### E. Grievances, medical requests, and scheduling

Mr. Ogle filed medical care requests and grievances relating to the scheduling of his medical appointments, the healthcare he received, and issues with prescriptions not being refilled. *See* dkt. 42-12 at 70–76; dkt. 42-13. These include:

- A grievance regarding his medical care, which was forwarded to Ms. Hobson, the Health Services Administrator. Dkt. 42-11 at 11; dkt. 42-3; dkt. 42-13 at 2. Ms. Hobson was confused as to what the grievance was requesting, and responded that Mr. Ogle would need to be more specific and clarify what he was having issues with. Dkt. 42-3 at 2–3; dkt. 42-13 at 2–3.

- Two different medical requests regarding his medication being delayed or cancelled, and other chronic care issues or issues with his treatment plan not being followed. Dkt. 42-11 at 11–12. Ms. Wright responded to these requests, telling Mr. Ogle that he would have to wait and address his concerns during his chronic care appointments, which occurred every six months. *Id.*

- A healthcare request on March 17, 2020, stating that he had a headache and had had seizures, and that he had seen a nurse who had told him that there was nothing the nurses could do and he needed to see a doctor. Dkt. 42-12 at 72. Ms. Riggs responded to the request, noting that Mr. Ogle was scheduled for a chronic care appointment the following week. *Id.*; dkt. 42-7 at 2.

- A healthcare request on August 28, 2020, which was denied. Dkt. 42-11 at 13; 42-13 at 4. Mr. Ogle mistakenly believed that this request was denied by Julie Chantell, but now agrees that the request was actually denied by a nurse named Juanita Chattin. Dkt. 42-11 at 13.

Additionally, Mr. Ogle was supposed to have a chronic care appointment in March 2020, but Ms. Riggs and Chelsea Pearison informed Mr. Ogle that his appointment was rescheduled for the following week. Dkt. 42-11 at 19. Ms. Pearison and Ms. Riggs made Mr. Ogle take off his sunglasses, which the optometrist had authorized Mr. Ogle to wear. Dkt. 42-11 at 14, 18. Ms.

6

Pearison told Mr. Ogle that there were other patients in worse condition than Mr. Ogle was, and that Mr. Ogle would have to wait for his chronic care appointment to see the doctor.  *Id.*  Mr. Ogle expressed disbelief at the delayed appointment, and Ms. Riggs replied, "you want to go for two weeks?"  Dkt. 42-11 at 19.

Chelsea Pearison worked as a medical assistant, creating and submitting paperwork to assist medical staff.  Dkt. 42-10 at 1.  Ms. Pearison did not have the authority to cancel a patient's appointment but could communicate with patients about rescheduling appointments.  *Id.*  She does not specifically remember any interaction with Mr. Ogle.  *Id.*

Ms. Riggs does not recall any involvement in rescheduling Mr. Ogle's appointment.  Dkt. 42-7 at 3.

Mr. Ogle was ultimately seen for his chronic care appointment with Dr. Byrd on April 2, 2020.  Dkt. 42-7 at 3.  Dr. Byrd does not have any independent memory of the rescheduling.  Dkt. 42-2 at 4.

Mr. Ogle alleges that the Wexford medical providers would use the co-pay system to deter patients from complaining or from seeking medical care.  Dkt. 42-11 at 20–21.

### F.  Procedural history

Defendants moved for summary judgment on July 30, 2024.  Dkt. 39.  Mr. Ogle sought an extension of time to respond, dkt. 44, which the Court granted, giving him until November 25, 2024, to file a response, dkt. 45.  Mr. Ogle filed a response on January 29, 2025, dkt. 46, giving no explanation for

7

filing his response more than two months after the Court-imposed deadline. A week later he filed another response, dkt. 48.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

### A. Motion to strike

Mr. Ogle filed a response to Defendants' motion for summary judgment on January 29, 2025, more than two months after the deadline. Dkt. 46; *see* dkt. 45. Moreover, it was unsigned, and Mr. Ogle did not designate any additional evidence or submit a statement of material facts in dispute. Dkt. 46. Defendants filed a reply, arguing that Mr. Ogle's response should be stricken

as untimely and improper, as well as responding to the substance of the motion. Dkt. 47. Three days later, Mr. Ogle filed another response, which was signed and contained different arguments than his first filing. Dkt. 48. Defendants filed a motion to strike, arguing that multiple responses to a dispositive motion are improper. Dkt. 49.

Mr. Ogle has provided no explanation or excuse as to why his responses were untimely, or why he filed a second, different response. The first response, dkt. 46, violates Federal Rule of Civil Procedure 11(a) because it is unsigned. It also violates S.D. Ind. L.R. 56-1(b) because it does not have a statement of material facts in dispute or otherwise support asserted facts with specific citations to the evidentiary record. The Court therefore strikes Mr. Ogle's first response, dkt. 46. *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528-29 (7th Cir. 2020) (affirming district court's striking of plaintiff's purported statement of disputed material facts because it did not comply with S.D. Ind. L.R. 56-1(b)).

The second response, dkt. 48, fares no better. In addition to having been filed more than two months after the Court's deadline, it too does not comply with S.D. Ind. L.R. 56-1(b). To the extent that Mr. Ogle intended for the first 10 pages to function as a statement of material facts in dispute, they don't. Instead, his second response is a lengthy narrative, bereft of citations to record evidence and would require the Court to sift through it searching for genuinely disputed material facts, which would defeat the purpose of the rule. *Hinterberger*, 966 F.3d at 529. The Court therefore **GRANTS** Defendants'

motion to strike, dkt. 48.  *See Rosemary B. on Behalf of Michael B. v. Board of Educ. of. Comm. High School*, 52 F.3d 156, 158 (7th Cir. 1995) ("A district court has the power to strike a response to a motion for summary judgment when the non-moving party fails to comply with local rules regarding that response."); *see also Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (noting that "even *pro se* litigants must follow rules of civil procedure").

### B. Eighth Amendment Deliberate Indifference

"The Eighth Amendment proscribes deliberate indifference to serious medical needs of prisoners amounting to the unnecessary and wanton infliction of pain." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022).  "In order to maintain a deliberate indifference claim, [Mr. Ogle] must point to evidence that (1) [he] suffered an objectively serious medical condition; (2) the defendant in question knew of the condition and was deliberately indifferent to treating [Mr. Ogle]; and (3) this deliberate indifference injured [Mr. Ogle]." *Id.*

Mr. Ogle brings Eighth Amendment deliberate indifference claims against the eleven individual defendants.  Defendants do not dispute that Mr. Ogle's medical conditions were serious; instead, they argue that no reasonable jury could find that they were deliberately indifferent to treating that condition, and they are therefore entitled to summary judgment.  *See* dkt. 40 at 8; dkts. 42-1–42-11.

### 1. Dr. Rajoli

Mr. Ogle alleges that Dr. Rajoli failed to prescribe antiseizure medication,
manage Mr. Ogle's hypoglycemia or properly treat Mr. Ogle's eye injury, and
allowed prescriptions to lapse. Dkt. 42-11 at 5–6, 8–9. Dr. Rajoli responds
that the care he provided was appropriate. Dkt. 40 at 9.

Mr. Ogle was not taking antiseizure medication when Dr. Rajoli began
treating him, and his medical records do not indicate that his seizures were
exacerbated without medication or were severe enough to require antiseizure
medication to treat. Dkt. 42-11 at 1, 4. When Mr. Ogle requested to try
antiseizure medication again, Dr. Rajoli prescribed it. *Id.* at 3. Mr. Ogle had
told Dr. Rajoli that Excedrin was effective at managing his seizures, as his
seizures were tied to his migraines, and Dr. Rajoli continued to prescribe
Excedrin. *Id.* at 4. Mr. Ogle argued Dr. Rajoli should have prescribed an
antiseizure medication rather than Excedrin alone, dkt. 42-11 at 5–6, however,
the Eighth Amendment does not require that Dr. Rajoli prescribe a certain
class of medication to treat Mr. Ogle's condition. The designated evidence
shows that Dr. Rajoli's decision to prescribe Excedrin rather than another
medication was based on his professional judgment, and there is no designated
evidence from which a reasonable jury could conclude that his decision was a
substantial departure from that acceptable professional judgment, either. *See
Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (noting that there is no
Eighth Amendment violation "where a prisoner's claim is based on a preference

for one medication over another unless there is evidence of a *substantial* departure from acceptable professional judgment."); *see* dkt. 42-12.

For Mr. Ogle's hypoglycemia, Dr. Rajoli determined it was properly managed through lifestyle modification and consuming food to alleviate incidences of low blood sugar. Dkt. 42-1 at 4. Dr. Rajoli authorized a continuous order for an additional snack for Mr. Ogle to help to manage his blood sugar. *Id.*; dkt. 42-12 at 6, 68. Dr. Rajoli did not believe that Mr. Ogle required any additional treatment or daily blood sugar checks. *Id.*; *see* dkt. 42-11 at 10. The designated evidence shows that this decision was based on Dr. Rajoli's professional judgment, and was not "blatantly inappropriate" or otherwise in violation of the Eighth Amendment. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment.").

As to the eye injury, Dr. Rajoli ordered Toradol to alleviate the pain, and referrals to see an optometrist and ophthalmologist. *Id.* at 3–4. When there were no immediately available appointments for Mr. Ogle to see either provider, Dr. Rajoli consulted with the optometrist and then ordered medications. *Id.* No designated evidence supports a conclusion that Dr. Rajoli's course of treatment was not appropriate, or that he was responsible for the unavailability of specialist appointments. *See Pyles*, 771 F.3d at 409; *Walker v. Benjamin*,

12

293 F.3d 1030, 1038 (7th Cir. 2002) (no Eighth Amendment violation where doctor was not responsible for delay in inmate's appointment with specialist).

Finally, while Mr. Ogle's prescriptions lapsed at times, they were refilled when Mr. Ogle submitted written healthcare requests informing medical staff that he needed a refill, or continued when he saw medical providers. Nothing in the designated evidence allows a reasonable jury to find that Dr. Rajoli did not authorize prescriptions when he was aware that Mr. Ogle needed them. The Eighth Amendment does not require Dr. Rajoli to ensure that prescriptions never lapse. *See Machicote v. Roethlisberger*, 969 F.3d at 822, 828 (7th Cir. 2020) (affirming summary judgment where no evidence suggested doctor could have anticipated delay in prescription being filled); *Arnett v. Webster*, 658 F.3d 742, 758–59 (7th Cir. 2011) (no deliberate indifference where doctor failed to investigate after patient did not receive prescribed pain medications); *see also Blake v. Warner*, 756 F. App'x 653 (7th Cir. 2019).

Dr. Rajoli is therefore entitled to summary judgment on Mr. Ogle's Eighth Amendment claim.

### 2. Dr. Byrd

Mr. Ogle alleges that Dr. Byrd allowed Mr. Ogle's prescriptions to lapse at times. Dkt. 42-11 at 10. Mr. Ogle testified, however, that Dr. Byrd does an "awesome job" as a medical provider, and that nothing he had done was "necessarily malicious," so any claim against Dr. Byrd was "nominal" or could be completely dropped. *Id.* Dr. Byrd responds that he was minimally

involved in Mr. Ogle's treatment, and that the treatment he did provide was adequate. Dkt. 40 at 10.

The designated evidence does not allow a reasonable jury to find that Mr. Ogle could not request—and receive—refills or continuations of his prescriptions when needed, or that Dr. Byrd prevented Mr. Ogle from receiving his medications. Therefore, Dr. Byrd is entitled to summary judgment on Mr. Ogle's Eighth Amendment claim. *See Arnett*, 658 F.3d at 758–59.

### 3. Ms. Hobson

Mr. Ogle alleges that Ms. Hobson did not resolve his complaint that he had to submit healthcare requests to get prescriptions refilled. Dkt. 42-11 at 11. Ms. Hobson responds that she did not have any direct involvement with Mr. Ogle's medical care and made no decisions regarding his care. Dkt. 40 at 11; dkt. 42-3 at 3–4.

The designated evidence shows only that Ms. Hobson reviewed Mr. Ogle's medical records and then responded to the grievance specialists with that information. There is no designated evidence that shows Ms. Hobson ever ignored a request, prevented Mr. Ogle from receiving treatment, or otherwise contributed to or interfered with his care. *See Arnett*, 658 F.3d at 756 (case manager was not deliberately indifferent because he "was able to relegate to the prison's medical staff the provision of good medical care"); *Machicote*, 969 F.3d at 827 (affirming summary judgment for health services administrator where no evidence suggested she was involved in plaintiff's treatment or had authority

14

to intervene in his treatment); *Rivera v. Gupta*, 836 F.3d at 839, 841 (7th Cir. 2016).

Ms. Hobson is entitled to summary judgment on Mr. Ogle's Eighth Amendment claim.

### 4. Ms. Wright

Mr. Ogle alleges Ms. Wright did not adequately address his grievances when she responded by informing him that he would have to wait for his chronic care appointment scheduled for the following month to see a doctor, or sign up for nurse sick call. Dkt. 42-11 at 12; dkt. 42-12 at 71, 75. Ms. Wright responds that she was minimally involved in Mr. Ogle's care, and she responded properly to Mr. Ogle's complaints. Dkt. 40 at 12; dkt. 42-4 at 1–2.

The designated evidence shows that Ms. Wright responded to Mr. Ogle's grievances. The grievances do not indicate that Mr. Ogle needed emergency medical attention, or that Ms. Wright could have thought that he would be at a risk of substantial harm if he was not seen by medical providers immediately and disregarded that risk. *See* dkts. 42-12 at 71, 75. The designated evidence does not show, therefore, that Ms. Wright exhibited any deliberate indifference to Mr. Ogle's medical care. *See Arnett*, 658 F.3d at 756; *Machicote*, 969 F.3d at 827.

Ms. Wright is therefore entitled to summary judgment on the Eighth Amendment claim.

### 5. Ms. Chantell

Ms. Chantell was mistakenly named as a defendant in this lawsuit. Mr.

15

Ogle believed she had signed a response to a healthcare request form he submitted, however, he subsequently agreed that it was actually a different nurse, Juanita Chattin, who had signed that form.  Dkt. 42-11 at 12–13. There is no other claim or allegation against Ms. Chantell, and she is entitled to summary judgment.

### 6.  Ms. Hamilton and Ms. Auler

Ms. Hamilton and Ms. Auler were both nurses who treated Mr. Ogle's eye injury on two different occasions.  Mr. Ogle alleges they did not provide adequate care.  Dkt. 42-11 at 13, 16.  Ms. Hamilton and Ms. Auler respond that as nurses they did not have the authority to order specific care, but they assessed Mr. Ogle's injury, contacted the physician, and followed the physician's directions.  Dkt. 40 at 14, 16.

The designated evidence shows that, when Ms. Hamilton saw Mr. Ogle for his injury, she completed a nurse assessment, contacted Dr. Byrd, and followed Dr. Byrd's directions.  Dkt. 42-5.  Similarly, the designated evidence shows that when Ms. Auler saw Mr. Ogle for his injury, she completed an assessment and contacted Dr. Rajoli, who instructed her to provide a Toradol injection for the pain and refer Mr. Ogle to an optometrist.  Dkt. 42-8 at 1–2. Ms. Auler followed those instructions.  *Id.*  Based on these facts, no reasonable juror could conclude that either Ms. Hamilton or Ms. Auler was deliberately indifferent to Mr. Ogle's medical needs.  *See Brown v. Osmundson*, 38 F.4th 545, 553 (7th Cir. 2022) (no deliberate indifference when nurse performed

16

assigned duties and relayed necessary information to doctor, as only doctor could make important treatment decisions for patient).

Ms. Hamilton and Ms. Auler are both entitled to summary judgment on the Eighth Amendment claim.

### 7. Ms. McDonald

Mr. Ogle alleges Ms. McDonald delayed his medical care when she saw him on December 14 in response to a healthcare request he had submitted on December 9. Dkt. 42-11 at 13; dkt. 42-12 at 43–45; dkt. 42-6. Ms. McDonald responds that she provided appropriate care, including by referring Mr. Ogle to be seen by a physician. Dkt. 40 at 15.

The December 9 healthcare request is not included in the designated evidence. Also, the designated evidence does not show when Ms. McDonald became aware of it, or whether Mr. Ogle complained of being in significant pain. While "inexcusable or excessive" delays may constitute an Eighth Amendment violation, a "minimal" delay does not. *Brown*, 38 F.4th at 551 (holding that a delay of three-and-a-half days to send patient with appendicitis to the hospital was only a "minimal" delay); *see Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016). Here, there is no designated evidence that would allow a reasonable juror to conclude that there was an "inexcusable or excessive" delay between Mr. Ogle submitting the request and Ms. McDonald seeing him five days later, or that Ms. McDonald herself was responsible for the delay. *See Thomas v. Martija*, 991 F.3d 763, 773 (7th Cir. 2021) (affirming summary judgment for a defendant who "had nothing to do with any delays").

17

Consequently, Ms. McDonald is entitled to summary judgment on Mr. Ogle's Eighth Amendment claim.

### 8. Ms. Riggs

Mr. Ogle alleges Ms. Riggs was deliberately indifferent when she did not give him prescribed medicated eye drops until the day after his injury, refused to see him for an in-person assessment, and prevented him from seeing the doctor. Dkt. 42-11 at 14–17. Ms. Riggs responds that she appropriately followed a physician's orders in providing Mr. Ogle care. Dkt. 40 at 15–16.

The designated evidence shows that Ms. Riggs received a verbal order from Dr. Byrd on August 28, 2020—the day after Mr. Ogle's eye was injured—to give Mr. Ogle eye drops and dispensed the eye drops to him that same morning, less than 24 hours after the injury occurred. Dkt. 42-7; dkt. 42-2 at 3; dkt. 42-12 at 34, 38. She did not receive instructions that Mr. Ogle should be seen by a doctor or have an in-person assessment at that point, nor did she believe it was necessary for Mr. Ogle to do so. *Id.* As the designated evidence shows Ms. Riggs followed the physician's instructions and promptly delivered Mr. Ogle's medication, no reasonable juror could conclude that she was deliberately indifferent to Mr. Ogle's medical needs. *See Brown*, 38 F.4th at 553.

Consequently, Ms. Riggs is entitled to summary judgment on the Eighth Amendment claim.

### 9. Ms. Cooper

Mr. Ogle alleges Ms. Cooper was deliberately indifferent for failing to

18

schedule him an appointment with an ophthalmologist. Dkt. 42-11 at 17. Ms. Cooper responds that her role was limited to administrative and scheduling responsibilities, rather than provide medical care, and that she took steps to follow the directions of medical professionals. Dkt. 40 at 17.

The designated evidence shows that Ms. Cooper tried to schedule an appointment for Mr. Ogle promptly after receiving the request, but no providers were able to accommodate him as a patient at that time. Dkt. 42-9 at 2–3. Ms. Cooper had no control over whether providers had available appointments or not, so she cannot be liable for the lack of available appointments. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019) (affirming summary judgment for individual who had no control over scheduling delays with outside specialists).

Ms. Cooper is therefore entitled to summary judgment on the Eighth Amendment claim.

### 10.    Ms. Pearison

Mr. Ogle alleges Ms. Pearison was deliberately indifferent because she delayed his chronic care appointment in March 2020, and she told him to remove his sunglasses. Dkt. 42-11 at 17–19. Ms. Pearison responds that she was not involved in rescheduling his appointment, and asking a patient to remove sunglasses is not a constitutional violation. Dkt. 40 at 18–19.

As to the rescheduled appointment, the designated evidence shows that Ms. Pearison could not have been responsible, as she did not have the authority or ability to change appointment times. Dkt. 42-10 at 2. As she was

19

not responsible for the delayed appointment, she cannot be liable for the delay. *See Thomas*, 991 F.3d at 773.

As to the sunglasses, Ms. Pearison testified that she did not remember any interaction with Mr. Ogle, and so did not deny that she told him to take off his sunglasses.  *Id.*  There is no designated evidence, however, suggesting that Ms. Pearison was aware that Mr. Ogle needed to wear the sunglasses, or that not wearing the sunglasses would cause Mr. Ogle any harm, or that taking the sunglasses off did cause Mr. Ogle any harm.  Therefore, a reasonable juror could not conclude from the designated evidence that Ms. Pearison was aware of and disregarded a substantial risk to Mr. Ogle's safety by instructing him to take off his sunglasses, as required by the Eighth Amendment deliberate indifference standard.  *See Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) ("[A] defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.").

Ms. Pearison is therefore entitled to summary judgment on the Eighth Amendment claim.

### C. First Amendment Retaliation

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action.  *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th

Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Mr. Ogle alleged that Defendants retaliated against him by delaying his care, which resulted in Mr. Ogle not getting medical assistance, updated treatment plans, or medication renewals when he was supposed to. Dkt. 42-11 at 22. For instance, he alleged that Dr. Byrd's failure to immediately prescribe a different antiseizure medication when Mr. Ogle stopped taking Dilantin was retaliation for Mr. Ogle complaining about his care, as was Ms. Cooper's failure to schedule an ophthalmology appointment. *Id.* at 24, 25. Mr. Ogle also alleges that defendants used copays to deter inmates from complaining or seeking medical care. *Id.* at 20.

Defendants do not dispute that Mr. Ogle engaged in protected First Amendment activity by requesting medical attention or complaining about the care he received. Dkt. 40 at 19–20. They argue, however, that Mr. Ogle did not suffer any deprivation, and that no defendant's conduct was motivated by any protected First Amendment activity. *Id.*

As to the deprivation element, the designated evidence shows that Mr. Ogle was able to continue to access and receive care—including through chronic care appointments and nursing sick calls—file healthcare requests, and receive the medications that he needed. Thus, while denial of adequate

medical care is a cognizable deprivation in the First Amendment context, *see Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015), Mr. Ogle has not shown that he suffered any deprivation that would likely to deter "a person of ordinary firmness" from continuing to file healthcare requests or grievances. *See Douglas v. Reeves*, 964 F.3d 643, 647–48 (7th Cir. 2020) (A plaintiff "needed to point to a deprivation with some significant deterrent effect in the prison context" to support a First Amendment retaliation claim).

As to the motivating factor element, the designated evidence does not allow a reasonable jury to find that any defendant's decisions or conduct was motivated by Mr. Ogle's requests for care. While Mr. Ogle may believe that each defendant sought to retaliate against him, mere speculation as to motive—without any other evidence—is insufficient to survive summary judgment. Similarly, there is no explanation in the designated evidence as to how charging copays was in any way retaliatory or designed to deter healthcare requests. *See Jones*, 27 F.4th at 1284 (quoting *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013).

In sum, there is no designated evidence that would support a retaliation claim against any defendant. Consequently, all defendants are entitled to summary judgment on Mr. Ogle's First Amendment claim.

### D. *Monell* claim against Wexford

A private company acting under color of state law such as Wexford can be held liable when its "official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind [the]

constitutional injury." *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016); *Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010); *see Monell v. Dep't of Soc. Servs.*, 438 U.S. 658, 611 (1978).

Mr. Ogle alleges that Wexford had an unconstitutional policy or custom of delaying medication delivery and access to medical providers, and of custody officers not using proper emergency signals to contact medical staff.

As a threshold matter, however, if there is no underlying constitutional deprivation, a *Monell* claim cannot survive. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) ("To begin, a § 1983 plaintiff must always show 'that he was deprived of a federal right.'"); *Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010) ("[B]ecause there is no underlying constitutional violation, the City cannot be liable under *Monell*."). As discussed above, the designated evidence would not allow a reasonable jury to conclude that Mr. Ogle's medical care was so delayed as to violate the Eighth Amendment. *See Munson v. Newbold*, 46 F.4th 678, 682 (7th Cir. 2022) (holding that "Wexford cannot be liable where, as here, [plaintiff] is unable to establish that he was deprived of a federal right."). And to the extent that Mr. Ogle argues custody officers should contact medical staff via a different method, he does not explain how that implicates any constitutional right, or offer evidence that Wexford was responsible for the actions of custody officers, or that the method of calling delayed his care. *See Dean*, 18 F.4th at 235.

Without any underlying constitutional injury, there is no *Monell* liability under § 1983. Therefore, Wexford is entitled to summary judgment on Mr. Ogle's *Monell* claim.

**IV.**
**Conclusion**

Defendants' motion to strike is **GRANTED**. Dkt. [49]. The **clerk is directed to strike** the responses filed at dkts. 46 and 48.

Defendants' motion for summary judgment is **GRANTED**. Dkt. [39].

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 3/12/2025

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

BRYAN A. OGLE
156782
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

All electronically registered counsel